Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Robert J. Drexler, Jr. (SBN 119119)
Robert.Drexler@capstonelawyers.com
Molly Ann DeSario (SBN 230763)
Molly.DeSario@capstonelawyers.com
Jonathan Lee (SBN 267146)
Jonathan.Lee @capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiffs Stephanie Garrido and Jazmin Solano

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE GARRIDO and JAZMIN SOLANO, as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),<br><br>       Plaintiffs,<br><br>       vs.<br><br>J.C. PENNEY CORPORATION, INC., a Delaware corporation; J.C. PENNEY COMPANY, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No. 5:18-cv-02051-JVS-SP<br><br>**NOTICE OF MOTION AND MOTION FOR COURT APPROVAL OF THE PARTIES' PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    January 28, 2019<br>Time:    1:30 p.m.<br>Place:   Courtroom 10C |

1   **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS**

2   **OF RECORD:**

3       **PLEASE TAKE NOTICE** that on January 28, 2019 at 1:30 p.m., or as soon

4   thereafter as counsel may be heard, in Courtroom 10C of the above-captioned court,

5   located at located at 411 West 4th Street, Room 1053 Santa Ana, CA 92701, the

6   Honorable James V. Selna presiding, Plaintiffs Stephanie Garrido and Jazmin Solano

7   will, and hereby do, move this Court for entry of an order and judgment approving the

8   Parties' PAGA settlement pursuant to Labor Code section 2699(*l*)(2).

9       This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the

10  Memorandum of Points and Authorities in Support of Motion for Court approval of the

11  PAGA Settlement; (3) the Declaration of Raul Perez, which attaches the PAGA

12  Settlement Agreement;[1] (4) the [Proposed] Order Approving the PAGA Settlement

13  Agreement and Granting Judgment Thereon; (5) the records, pleadings, and papers filed

14  in this action; and (6) upon such other documentary and oral evidence or argument as

15  may be presented to the Court at or prior to the hearing of this Motion.

16

17  Dated:  December 28, 2018            Respectfully submitted,

18                                       Capstone Law APC

19

20  By: _____
                                         Raul Perez
21                                       Robert J. Drexler, Jr.
                                         Molly Ann DeSario
22                                       Jonathan Lee

23                                       Attorneys for Plaintiffs Stephanie Garrido
                                         and Jazmin Solano

24

25

26

27      _____
        [1] Plaintiffs have e-filed a copy of the PAGA Settlement Agreement with the
28  LWDA. *See* Declaration of Raul Perez, Exhibit 2 (confirmation of receipt from LWDA).

1

**TABLE OF CONTENTS**

2

3  I.    INTRODUCTION..................................................................................1

4  II.   FACTS AND PROCEDURE...............................................................3

5        A.   Overview of the Litigation .........................................................3

6        B.   The Parties Negotiated a Fair and Reasonable Settlement of Plaintiffs'

7             Claims.........................................................................................4

8             1.    Terms of the Settlement and Distribution of PAGA Penalties .................4

9             2.    Allocations for the PAGA Settlement Employees....................................5

10       C.   The PAGA Claims Released by the Settlement...................................6

11 III.  ARGUMENT .......................................................................................7

12       A.   The PAGA Penalties Secured by the Settlement Are Genuine and

13            Meaningful, and Fulfill PAGA's Underlying Purpose To Benefit the

14            Public..........................................................................................7

15       B.   The Court Should Award the Requested Attorneys' Fees in the Amount

16            of One-Third of the Gross Settlement Fund ......................................11

17            1.    A Fee of One-Third of the Gross Settlement Fund Is Fair and

18                  Reasonable and Serves the Public Policy of Attracting Competent

19                  Counsel to Litigate These Cases ................................................14

20            2.    A Lodestar Cross-Check Confirms the Reasonableness of the Fee

21                  Award ...................................................................................16

22       C.   The Requested Recovery In Litigation Expenses Is Reasonable .......19

23 IV.   CONCLUSION...................................................................................20

24

25

26

27

28

# TABLE OF AUTHORITIES

**STATE CASES**

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008)..........................20

*Bank of America v. Cory*, 164 Cal. App. 3d 66 (1985) .........................................12

*Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407 (1991)...........................20

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ...........................................13

*In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009)...........................17

*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014)....................... 2, 7, 11

*Laffitte v. Robert Half Int'l Inc*., 1 Cal. 5th 480 (2016)....................................*passim*

*Olson v. Automobile Club of Southern Calif.*, 42 Cal. 4th 1142 (2008)...........................20

*People ex rei. Stratham v. Acacia Research Corp.*, 210 Cal. App. 4th 487 (2012) ...............................................................................................................12

*PLCM Group v. Drexler*, 22 Cal. 4th 1084 (2000) ...............................................17

*Spann v. J.C. Penney Corp.*, No. 12-0215-FMO, 2016 WL 5844606 (C.D. Cal. Sept. 30, 2016)..................................................................................19

*Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495 (2009) ...........................18


**FEDERAL CASES**

*Boeing Co. v. Van Gernert*, 444 U.S. 472 (1980)....................................................12

*Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014).................................19

*In re Rite Aid Corp. Securities Litig*., 396 F.3d 294 (3d Cir. 2005)..................................13

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995)......................13

*McKenzie v. Federal Express Corp.*, 765 F. Supp. 2d 1222 (C.D. Cal. 2011)................................................................................................................8

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008)...........................17

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ..........................................................................................................12

MOTION FOR COURT APPROVAL OF THE PARTIES' PAGA SETTLEMENT

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................................. 12

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................. 13, 15, 18

*Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949 (C.D. Cal. 2015) ........................ 1

**STATE STATUTES**

Cal. Lab. Code §§ 2698 *et seq.* (Priv. Atty's. Gen. Act (PAGA)) .............................. *passim*

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3      Pursuant to the Labor Code Private Attorneys General Act of 2004 (Lab. Code.

4  §§ 2698, *et seq.*, "PAGA"), Plaintiffs Stephanie Garrido and Jazmin Solano seek Court

5  approval of the $3.5 million settlement of their claim for PAGA civil penalties with

6  Defendant J.C. Penney Corporation, Inc. ("Defendant") (collectively with Plaintiffs, the

7  "Parties").

8      The PAGA provides that the trial court "shall review and approve any settlement

9  of any civil action filed pursuant to this part." Lab. Code § 2699(*l*)(2). The statute does

10  not require the two-step process utilized in class actions under Rule 23(e); indeed case

11  law holds that Rule 23 does not apply to PAGA representative actions. *See*, *e.g.*,

12  *Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949, 954 (C.D. Cal. 2015) ("this

13  court will follow the majority of courts in holding that the plaintiff's PAGA claim is not

14  subject to the requirements of Rule 23"). For PAGA settlements, the California Labor

15  Workforce and Development Agency ("LWDA") has explained that trial courts should

16  consider whether "the relief provided for under the PAGA [is] genuine and meaningful,

17  consistent with the underlying purpose of the statute to benefit the public[.]" *O'Connor

18  v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. Aug. 18, 2016). And

19  nothing in the PAGA changes the strong judicial preference in support approving

20  settlements.

21      The principal terms of the PAGA Settlement Agreement[2] are as follows:

22      (1)    The creation of a PAGA Settlement Fund of approximately $2,238,333,
             which will be paid to aggrieved employees and the LWDA in full
23             satisfaction of all claims for PAGA civil penalties under the California
             Labor Code, Wage Orders, regulations, and/or other provisions of law
24             alleged to have been violated in the operative Complaint with respect to
             aggrieved employees ("PAGA Settlement Fund").

25

26      _____
      [2] Unless indicated otherwise, all capitalized terms used herein have the same
27  meaning as those defined by the PAGA Settlement Agreement, which is attached as
Exhibit 1 to the Declaration of Raul Perez filed in conjunction with this motion. Proof of
28  service of the Settlement to the LWDA is attached as Exhibit 2 to the Perez Decl.

    (a)    Seventy-five percent of the PAGA Settlement Fund, or approximately $1,678,750, will be paid to the LWDA pursuant to Labor Code section 2699(i).

    (b)    Twenty-five percent of the PAGA Settlement Fund, or approximately $559,583, will be paid to all persons who were employed by Defendant in California as non-exempt, hourly-paid salon stylists, cashiers, sales associates, or other position assigned cashier duties at any time during the Settlement Period in a California retail store location (excluding employees that worked at JCPenney Store Nos. 0250, 1778, 2648, 2649, 2823, and/or 2937) ("Aggrieved Employees"). There are approximately 19,000 Aggrieved Employees.

(2)    General Release Payments of $5,000, each, to Plaintiffs Garrido and Solano as consideration for general releases of all claims they may have against Defendant arising out of their employment.

(4)    Reasonable attorneys' fees and costs under Labor Code section 2699(g) for Plaintiffs' Counsel's successful prosecution and resolution of this action. Plaintiffs request $1,166,667 in attorneys' fees and up to $35,000 in costs for their counsel, Capstone Law APC ("Plaintiffs' Counsel").

(5)    Settlement Administration Costs of up to $50,000.

The proposed Settlement accomplishes PAGA's objectives by imposing sufficient civil penalties "to punish and deter" Defendant from committing any of the Labor Code violations alleged, while also ensuring that the penalties are not "unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2); *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 384 (2014). The amount, $3.5 million, representing among the highest figures in a settlement of a PAGA-only representative action. Furthermore, the settlement was negotiated by the parties at arm's length with the assistance of Mark Rudy, Esq., an experienced and well-respected mediator of wage and hour actions, including PAGA actions. The civil penalties secured by the settlement are genuine and meaningful, and fulfill PAGA's underlying purpose to benefit the public.

For these reasons, Plaintiffs respectfully request that the Court approve the Settlement and enter the proposed Order Approving the PAGA Settlement Agreement and Granting Judgment Thereon to which the Parties have stipulated.[3]

---

[3] Defendant does not waive, and instead expressly reserves, its right to challenge

1    **II.**    **FACTS AND PROCEDURE**

2        **A.**    **Overview of the Litigation**

3         On August 11, 2017, Plaintiffs filed suit in the Superior Court of California for

4  the County of Riverside against J.C. Penney Corporation, Inc. and J.C. Penney

5  Company, Inc., alleging a representative PAGA action on behalf of non-exempt, hourly-

6  paid cashiers, sales associates, or other position assigned cashier duties in a California

7  retail store location (excluding employees that worked at JCPenney Store Nos. 0250,

8  1778, 2648, 2649, 2823, and/or 2937).[4]  *See* Declaration of Raul Perez ["Perez Decl."] ¶

9  2.

10        Plaintiffs' operative Complaint alleges  violations of California's Suitable Seating

11  Regulations.  Plaintiffs allege that JCPenney violated Section 14(A) of Industrial

12  Welfare Commission Order No. 7-2001, "because Plaintiffs and other non-party

13  Aggrieved Employees were not allowed to sit, even when the nature of their work would

14  reasonably permit the use of seats, nor were they provided with suitable seats."

15  Complaint ¶ 43.  Plaintiffs also allege that Defendant violated Section 14(B) because

16  "Defendants did not provide Plaintiffs and other non-Party Aggrieved Employees with

17  seats or stools in reasonable proximity to their work to allow them to use when it would

18  not interfere with the performance of their duties for times when they were not engaged

19  in active duties that require standing."  *Id.* at ¶ 52.  Perez Decl. ¶ 3.

20        The Parties engaged in significant discovery in order to facilitate a meaningful

21  mediation, including document productions (resulting in the exchange of hundreds of

22  pages of Defendant's records and employment policies and Plaintiffs' records of their

23  employment with Defendant).  Plaintiffs' counsel also did considerable research into

24

25  all factual and legal characterizations made in this motion and the propriety of Plaintiffs

26  pursuing the representative claims should the Court not approve this Settlement
Agreement or enter an order and final judgment as set forth in the Parties PAGA

27  Settlement Agreement.
    [4] On December 12, 2018, J. C. Penney Company, Inc. was dismissed from this

28  case.

seating claim cases and performed on-site inspections of selected retail stores. Plaintiffs' counsel also defended the depositions of Plaintiffs Stephanie Garrido and Jazmin Solano and deposed Defendant's corporate person most knowledgeable (James Brandt, Defendant's Senior Human Resources Director). Perez Decl. ¶ 4.

Following the depositions and document productions, on March 21, 2018, the Parties participated in an all-day of mediation with Mark Rudy, Esq., an experienced mediator of wage and hour class actions. Mr. Rudy helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. Although the Parties did not settle at mediation, Mr. Rudy assisted the Parties in narrowing the gap between their respective positions, and ultimately presented the Parties with an initial "mediator's proposal," or a settlement on the terms proposed by the mediator, including the principal monetary terms. Perez Decl. ¶ 5.

The Parties did not accept the first mediator's proposal. As Plaintiffs continued to investigate their claims and press their prosecution, Mr. Rudy stayed involved, attempting to achieve a resolution. Mr. Rudy eventually presented a second mediator's proposal, which the Parties accepted. In furtherance of the mediator's proposal and the Parties' settlement, Plaintiffs filed the Second Amended Complaint to add salon stylists to the proposed PAGA representative. Plaintiff subsequently filed the Third Amended Complaint, which is the operative Complaint, to plead additional seating allegations. On September 24, 2018, Defendant removed the action to federal court. Perez Decl. ¶ 6.

**B.      The Parties Negotiated a Fair and Reasonable Settlement of Plaintiffs' Claims**

**1.      Terms of the Settlement and Distribution of PAGA Penalties**

The Settlement provides that Defendant will pay a total of $3.5 million to settle this action. From this amount, payments will be made to the LWDA and the Aggrieved Employees, to Mr. Garrido and Ms. Solano as compensation for general releases, to Plaintiffs' Counsel for their attorneys for fees and litigation costs, and to the Settlement Administrator (ILYM) for settlement administration costs. Settlement Agreement ¶¶ 7-9,

1  14, 17, 26-27, 29.

2       The LWDA will receive approximately $1,678,750 from the Settlement.

3  Aggrieved Employees will receive approximately $559,583 from the Settlement. The

4  Aggrieved Employees encompassed by the proposed Settlement are all persons who

5  were employed by Defendant in California as non-exempt, hourly-paid salon stylists,

6  cashiers, sales associates, or other position assigned cashier duties at any time during the

7  Settlement Period in a California retail store location (excluding employees that worked

8  at JCPenney Store Nos. 0250, 1778, 2648, 2649, 2823, and/or 2937 who previously

9  settled similar claims). Settlement Agreement ¶ 2. There are approximately 19,000

10  Aggrieved Employees.

11            **2.      Allocations for the PAGA Settlement Employees**

12       Payments to Aggrieved Employees will be made from PAGA Settlement Fund.

13  The individual allocations will be calculated on a pro-rata basis using the number of pay

14  periods worked by each employee. Defendant will provide the total number of pay

15  periods worked by each Aggrieved Employee and the total number of pay periods

16  worked by all Aggrieved Employees during the Settlement Period. Settlement

17  Agreement ¶ 8. The Settlement Administrator will calculate each Aggrieved Employee's

18  payment using the proportional number of pay periods during which the employee

19  worked. Thus, the Settlement Administrator will perform the following calculation to

20  calculate individual payments: Settlement Payment = (25% of PAGA Settlement Fund)

21  × (pay periods worked by individual Aggrieved Employee during the Settlement Period

22  ÷ total pay periods worked by all Aggrieved Employees during the Settlement Period).

23  Settlement Agreement ¶ 8(b). This is a fair and equitable means of allocating the

24  penalties. Aggrieved Employees who worked for a longer duration during the Settlement

25  Period will receive proportionally larger payments than those employees who worked

26  for shorter tenures.

27       As the Settlement payments to the Aggrieved Employees are for the compromise

28  of claims for alleged PAGA civil penalties, the payments will be treated as

1   miscellaneous income with no taxes withheld, and will be reported by the Settlement

2   Administrator on IRS Form 1099s to the respective PAGA Settlement Employee and

3   governmental authorities. Settlement Agreement ¶ 34.

4        **C.    The PAGA Claims Released by the Settlement**

5        The California Supreme Court has explained that a judgment in "a representative

6   action brought by an aggrieved employee under the Labor Code Private Attorneys

7   General Act of 2004 ... is binding not only on the named employee plaintiff but also on

8   government agencies and any aggrieved employee not a party to the proceeding." *Arias*

9   *v. Superior Court*, 46 Cal. 4th 969, 985 (2009). Accordingly, the Aggrieved Employees

10  will release certain PAGA claims under the Settlement that accrue from August 11, 2016

11  through September 1, 2018. Settlement Agreement ¶ 15. These "Released Claims" are

12  all claims, rights, demands, liabilities, and causes of action for PAGA civil penalties

13  arising out of or relating to the causes of action asserted or which could have been

14  asserted in the Action, including, and notwithstanding the theory on which such causes

15  of action were, or could be, based on all claims for the failure to comply with the

16  Suitable Seating Regulations. Settlement Agreement ¶ 11.

17       Upon the Effective Date, the Plaintiffs, each Aggrieved Employee, and the State

18  of California will be deemed to have fully released the Released Parties from the

19  Released Claims, as provided in the Settlement Agreement. Settlement Agreement ¶ 6.

20       Additionally, in exchange for general release payments, Ms. Garrido and Ms.

21  Solano have agreed to broader general releases of all claims of any kind against

22  Defendant, including claims for interest, attorneys' fees and costs, restitution, and

23  equitable and declaratory relief. Settlement Agreement ¶ 28. The Action will

24  accordingly be dismissed with prejudice as to Plaintiffs' claims.  In addition, Plaintiffs

25  have agreed to dismiss their class claims and allegations without prejudice upon the

26  Effective Date of the Settlement Agreement. Settlement Agreement ¶ 25.

27

28

1    **III.    ARGUMENT**

2        **A.    The PAGA Penalties Secured by the Settlement Are Genuine and**

3             **Meaningful, and Fulfill PAGA's Underlying Purpose To Benefit the**

4             **Public**

5        The California legislature enacted PAGA to "augment the limited enforcement

6    capability of the [LWDA] by empowering employees to enforce the Labor Code as

7    representatives of the Agency." *Iskanian*, 59 Cal. 4th at 383.  PAGA authorizes an

8    employee to bring an action for "civil penalties on behalf of the state against his or her

9    employer for Labor Code violations committed against the employee and fellow

10   employees . . . ." *Id.* at 360. The goal of a PAGA enforcement action is to impose civil

11   penalties for Labor Code violations "significant enough to deter violations." *Id.* at 379.

12       Fundamentally, "a PAGA action is a statutory action in which the penalties

13   available are measured by the number of Labor Code violations committed by the

14   employer." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015).

15   Under the general provisions of the PAGA scheme, 75% of the civil penalties recovered

16   goes to the state while the remaining amount is given to the aggrieved employees. Lab.

17   Code § 2699(i). For Labor Code violations for which no penalty is provided, PAGA

18   provides that the penalties are generally $100 for each aggrieved employee per pay

19   period for the initial violation and $200 per pay period for each subsequent violation.

20   Cal. Lab. Code § 2699(f)(2). Although PAGA penalties are mandatory and must be

21   awarded by a court if a violation is found, the court "may award a lesser amount than the

22   maximum civil penalty amount specified by this part if, based on the facts and

23   circumstances of the particular case, to do otherwise would result in an award that is

24   unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2); *see also*

25   *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1213 (2008).

26       Moreover, the PAGA statute expressly distinguishes and preserves the right of

27   employees to separately (or concurrently) pursue their own causes of action against their

28   employers and to recover other available federal and state remedies. Cal. Lab. Code §

1   2699(g)(1); *see Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir.

2   2014) (explaining the differences between the finality in class action judgments and the

3   limited res judicata effect of PAGA judgments). "Unlike a class action seeking damages

4   or injunctive relief for injured employees, the purpose of PAGA is to incentivize private

5   parties to recover civil penalties for the government that otherwise may not have been

6   assessed and collected by overburdened state enforcement agencies." *McKenzie v.*

7   *Federal Express Corp.*, 765 F. Supp. 2d 1222, 1233 (C.D. Cal. 2011).

8       The PAGA statute specifically provides that "[t]he superior court shall review and

9   approve any settlement of any civil action filed pursuant to this part." Cal. Lab. Code §

10  2699(*l*)(2). Other than the provision quoted above, however, the PAGA does not

11  establish a standard for evaluating PAGA settlements. Indeed, the LWDA has stated that

12  it, "is not aware of any existing case law establishing a specific benchmark for PAGA

13  settlements, either on their own terms or in relation to the recovery on other claims in the

14  action." *See Smith v. H.F.D. No. 55, Inc.*, No. 2:15-CV-01293-KJM-KJN, 2018 WL

15  1899912, at *2 (E.D. Cal. Apr. 20, 2018); *Gutilla v. Aerotek, Inc.*, No. 1:15-CV-00191-

16  DAD-BAM, 2017 WL 2729864, at *2 (E.D. Cal. Mar. 22, 2017) ("the court is unable to

17  find . . . any published authority identifying the proper standard of review of PAGA

18  settlements to be employed by the court").

19      The statute, however, does not require a two-step process or otherwise mimic the

20  class action approval requirements when the parties reach a settlement only as to PAGA

21  civil penalties. *See Zackaria*, 142 F. Supp. 3d at 954 (ruling that PAGA is not subject to

22  the requirements of Rule 23); *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 810

23  (N.D. Cal. 2015) (a plaintiff not need plead the class certification requirements of Rule

24  23 in order to proceed on a PAGA claim).

25      In the absence of an explicit statutory requirement, the LWDA has provided

26  guidance, explaining that courts should evaluate settlements of PAGA claims based on

27  whether "the relief provided for under the PAGA [is] genuine and meaningful,

28  consistent with the underlying purpose of the statute to benefit the public." *O'Connor*,

1   201 F. Supp. 3d at 1133 (quoting the above passage). Courts defer to the agency's

2   interpretation of a statute where authority has been delegated to that agency. *See New*

3   *Cingular Wireless PCS, LLC v. Pub. Utilities Comm'n*, 246 Cal. App. 4th 784, 807

4   (2016). When evaluating a PAGA settlement, the Court should analyze whether the

5   amount of civil penalties obtained is "genuine and meaningful" in light of PAGA's

6   statutory purpose.

7         The Court's evaluation of the settlement should therefore ***not focus*** on the

8   average recovery per aggrieved employee but rather on PAGA's statutory purpose in

9   deterring Labor Code violations through the imposition of civil penalties, with special

10  attention on whether the relief is "genuine and meaningful." In assessing whether the

11  amount of civil penalties is genuine and meaningful, the Court may balance the amount

12  in penalties against the risks of further litigation. Here, Plaintiffs obtained a meaningful

13  amount of civil penalties despite facing hurdles had the litigation continued. Based on

14  information and evidence produced by Defendant during discovery as of the Parties'

15  mediation, Plaintiffs' Counsel determined that Aggrieved Employees worked a

16  combined total of approximately 291,950 pay periods during which Aggrieved

17  Employees operated a cash register, attended a fitting room, and/or worked in the salon.

18  Statutory penalties would be calculated according to Labor Code 2699(f)(2): If, at the

19  time of the alleged violation, the person employs one or more employees, the civil

20  penalty is one hundred dollars ($100) for each aggrieved employee per pay period for

21  the initial violation and two hundred dollars ($200) for each aggrieved employee per pay

22  period for each subsequent violation.

23        It should be noted, however, that some courts have interpreted Labor Code

24  section 2699(f)(2) to impose the enhanced "subsequent violation penalty" or "heightened

25  penalty" only after an employer has been notified that its conduct violates the Labor

26  Code.  *See Trang v. Turbine Engine Components Technologies Corp.*, No. CV 12–

27  07658 DDP (RZx), 2012 WL 6618854 (C.D. Cal. Dec. 19, 2012) ("courts have held that

28  employers are not subject to heightened penalties for subsequent violations unless and

until a court or commissioner notifies the employer that it is in violation of the Labor Code"); *Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Services, Inc.*, No. 05cv1199–IEG–CAB, 2009 WL 2448430 (S.D. Cal. 2009) (finding that California law imposes the "subsequent violation penalty" only after an employer has been notified its conduct violates the Labor Code).  While Plaintiffs regard this interpretation as flawed, they nonetheless recognize that this interpretation has gained traction with some courts, and elected therefore to conservatively estimate Defendant's maximum potential exposure for PAGA penalties by assessing a $100 penalty for all pay periods at issue during the one-year statute of limitations.

After calculating Defendant's maximum exposure under PAGA, Plaintiffs then discounted that exposure for settlement purposes to account for the risks of continued litigation, including: (i) the strength of Defendant's defenses on the merits; (ii) the risk of losing on any of a number of dispositive motions that could have been brought between now and trial (e.g., motions for summary judgment and/or motions in limine) which may have eliminated all or some of Plaintiffs' claims, or barred evidence necessary to prove such claims (such as a ruling by the Court that the trial was not manageable on a representative basis); (iii) the risk of losing at trial or prevailing only on some of the claims; (iv) the risk that the Court would exercise its discretion under PAGA to significantly reduce the maximum civil penalties available by statute;[5] (v) the chances of a favorable verdict being reversed on appeal; and (vi) the difficulties attendant to collecting on a judgment; e.g., solvency issues.

Moreover, Defendant argued that the nature of the work of Defendant's hourly-paid sales associates and salon stylists at cash registers and salon stations does not reasonably permit the use of seats during active periods of work.  Defendant also argued

---

[5] *See* Lab. Code § 2699(e) ("In any action by an aggrieved employee seeking recovery of a civil penalty available under subdivision (a) or (f), a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory.").

1    that providing seats would hinder employee work performance, customer service, loss

2    prevention, and store safety.

3       Defendant also argued that suitable customer seating and break room seating

4    existed to satisfy its legal obligations to provide seating during inactive periods of work

5    under subsection 14(B). Further, Defendant argues that a Pilot Seating Program

6    implemented in its California stores in 2017 satisfied its legal obligations to provide

7    seating during active periods of work under subsection 14(A). Taking into account the

8    above contingencies, Plaintiffs determined that a settlement for approximately 12% of

9    Defendant's total maximum potential exposure was warranted by the circumstances of

10    the case.

11       As the above analysis demonstrates, Plaintiffs objectively and knowledgably

12    balanced the strengths and weaknesses of their claims against the risk of continued

13    litigation, arriving at a settlement that is fair and reasonable in light of those risks. The

14    Settlement therefore accomplishes PAGA's objectives by imposing sufficient civil

15    penalties "to punish and deter" Defendant from future alleged Labor Code violations,

16    while also ensuring that the penalties are not "unjust, arbitrary and oppressive, or

17    confiscatory." Cal. Lab. Code § 2699(e)(2).

18       **B.**      **The Court Should Award the Requested Attorneys' Fees in the**

19            **Amount of One-Third of the Gross Settlement Fund**

20       PAGA provides that a plaintiff is entitled to recover reasonable attorneys' fees,

21    expenses, and costs. Section 2699(g)(1) of the California Labor Code provides that

22    "[a]ny employee who prevails in any action shall be entitled to an award of reasonable

23    attorney's fees and costs." As discussed below, in a *qui tam* action, reasonable attorneys'

24    fees and costs are typically awarded under the common fund doctrine where, as here, the

25    litigation creates a common fund of money in a specific amount for the benefit of others.

26       PAGA "is a type of qui tam action." *Iskanian v. CLS Transp. Los Angeles, LLC*,

27    59 Cal. 4th 348, 382 (2014). "A *qui tam* action 'is a type of private attorney general

28    lawsuit' [citation], in which 'the *qui tam* plaintiff stands in the shoes of the state or

political subdivision [citation].'" *People ex rei. Stratham v. Acacia Research Corp.*, 210 Cal. App. 4th 487, 501 (2012). A PAGA action is a *qui tam* action because the statute allows the employee plaintiff, acting as the proxy of the State's labor law enforcement agency, to sue his or her employer for Labor Code violations and recover civil penalties that otherwise would have been assessed and collected by the LWDA. *See Iskanian*, 59 Cal. 4th at 382. Indeed, majority of the civil penalties recovered in a PAGA action are paid to the State, with a smaller portion paid to the aggrieved employees (e.g. 75% paid to the state; 25% paid to the aggrieved employees). *See* Cal. Lab. Code § 2699(i).

Where, as here, a common fund is created in a *qui tam* action by the successful litigation of a plaintiff and her attorneys, the plaintiff's attorneys are entitled to recover their fees from the common fund:

> Those benefiting from the recovery of the fund, in this case some depositors and eventually the People of the State of California, must bear their share of the cost of litigation. Fees for taxpayers' attorneys will be deducted from the judgment, and each claimant's share reduced proportionately. To the extent the judgment relies upon section 1021.5 for recovery of attorney fees, it must be modified to confine the award of fees to the common fund theory.

*Bank of America v. Cory*, 164 Cal. App. 3d 66, 91 (1985) (authorizing common fund fees in a *qui tam* taxpayer suit against certain banks).

Likewise, through the successful efforts of Plaintiffs and their attorneys, a common fund was created in the amount of $3.5 million for the benefit of the employees and the State of California. Thus, these beneficiaries must bear their share of the costs and attorneys' fees, to be deducted from the gross settlement fund under the common fund theory. *Id.* Such fees are deducted as a percentage of the settlement amount. *See, e.g.*, *Boeing Co. v. Van Gernert*, 444 U.S. 472, 478-482 (1980); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003).

The California Supreme Court recently upheld the use of the common fund theory of recovery for attorneys' fees in *Laffitte v. Robert Half Int'l Inc.,* 1 Cal. 5th 480,

506 (2016).[6] In *Laffitte*, the settlement created a common fund of $19 million. The Court approved the award of attorneys' fees in the amount of one third of the gross $19 million settlement (e.g., an award of $6.33 million) under the common fund theory. *Id*. By awarding counsel a percentage of the total recovery, rather than fees based on hours worked, the common fund method encourages attorneys to efficiently litigate to achieve the best results possible for the class. *See Laffitte*, 1 Cal. 5th at 492-494. Indeed, "the percentage method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalties it for failure. *Id*. at 493 (quoting *In re Rite Aid Corp. Securities Litig*., 396 F.3d 294, 300 (3d Cir. 2005) (internal quotations omitted).

California state and federal courts routinely award attorneys' fees equaling one-third of the common fund. *See*, *e.g.*, *Laffitte v. Robert Half Int'l*, 180 Cal. Rptr. 3d 136, 149 (2016) ("33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits"); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) (accord); Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide conclude that fees representing one-third of the total recovery is consistent with market rates). Notably, the California Supreme Court in *Laffitte* affirmed a fee award representing 33 1/3 percent of the fund. *See Laffitte*, 1 Cal. 5th at 506.

A one-third common fund attorneys' fee award is also consistent with what courts have awarded in other representative action cases. The following list shows PAGA actions where attorneys' fees were awarded on a common fund basis:

---

[6] In diversity actions, federal courts must apply state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

- *Jones v. J.C. Penney Corporation*, Los Angeles Superior Court, Case No. BC451823 (approving fee award from PAGA-only settlement of $1.375M against a common fund of $3.2M (42%));

- *Price v. Uber Technologies*, Los Angeles Superior Court, Case No. BC554512 (awarding fee from PAGA-only settlement of $2,325,000 against a common fund settlement of $7,750,000 (30%));

- *Garcia v. Macy's*, San Bernardino County Superior Court, Case No. CIVDS1516007 (33.33% fee awarded on $12,500,000 settlement of a PAGA only case);

- *Garcia v. Pep Boys*, Orange County Superior Court, Case No. 30-2014-00720574-CU-OE-CJC (33.33% fee awarded on a $1,030,000 settlement of a PAGA only case);

- *Brewer v. Connell Chevrolet*, Orange County Superior Court, Case No. 30-2016-00852123-CU-OC-CXC (33.33% fee awarded on a PAGA only case);

- *Perez v. Staffmark Investment, LLC*, Riverside County Superior Court, Case No. MCC1401137 (33.33% fee awarded on a $650,000 settlement of a PAGA only case).

Based on the foregoing, awarding attorneys' fees based on a one-third percentage of the gross settlement amount is favored by California Courts when a fund established for the common benefit of others is involved, as is the case here. Accordingly, awarding fees on this basis in the amount of one third of the $3.5 million gross settlement fund is reasonable and appropriate.

## 1.    A Fee of One-Third of the Gross Settlement Fund Is Fair and Reasonable and Serves the Public Policy of Attracting Competent Counsel to Litigate These Cases

An award of fees from the gross settlement amount under the common fund doctrine prevents unjust enrichment of those who benefit from the common fund created through the successful efforts of plaintiff's counsel and furthers the important goal of attracting competent counsel to handle representative actions enforcing minimum labor standards. *Laffitte*, 1 Cal. 5th at 503. In affirming the use of the common fund doctrine in California, the California Supreme Court summarized the benefits of the percentage method of recovery stating: "The recognized advantages of the percentage method— including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily

prolonging the litigation [citations]—convince us the percentage method is a valuable tool that should not be denied our trial courts." *Id.*

Among the factors considered in determining whether the requested fee percentage is reasonable are: (1) the results achieved; (2) the skill required of plaintiff's counsel and the quality of work performed by plaintiff's counsel; (3) the contingent nature of the fee and the financial burden carried by the plaintiff; and (4) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). All these factors support an award here of one-third of the common fund.

First, Plaintiffs' Counsel's efforts resulted in a common fund settlement amount of $3.5 million. This is a very large PAGA settlement by any standard, and an especially good result in light of the challenges Plaintiffs would face in litigating the claims on a representative basis. Not only are there few PAGA suits taken to a successful verdict, the trial court is empowered to reduce civil penalties even after a successful trial. *See*, *e.g.*, *Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction under specified PAGA claim where the employer produced evidence that it took its obligations seriously); *Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254, at *5-*7 (Cal. Ct. App. May 12, 2011) (reversing trial court decision denying any civil penalties where violations had been proven, remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil penalties); *Li v. A Perfect Day Franchise, Inc*., No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (denying PAGA penalties for violation of California Labor Code § 226 as redundant with recovery on a class basis pursuant to California Labor Code § 226, directly); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalties from $2.8 million to $500,000.00); *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013) (reducing penalty for past PAGA violations from $1.8 million to $500,000.00, after rejecting numerous other PAGA claims). Here, Plaintiffs' Counsel's litigation, including extensive preparation,

1  discovery, depositions, exerted substantial leverage, leading to this successful result.
2  Perez Decl. ¶¶ 4-6, 14.

3      Second, Plaintiffs' Counsel are experienced representative action litigators. *See*
4  Perez Decl. ¶¶ 9-12, Ex. 3. This experience and expertise, combined with the high
5  quality of work performed in this case by Plaintiffs' Counsel, resulted in the Settlement
6  achieved.

7      Third, Plaintiffs' Counsel have been representing Plaintiffs (and the State of
8  California) in this matter on strictly contingency basis, and had to forego opportunities to
9  litigate other cases, incurred the risk of non-recovery after a substantial investment of
10  time, money, and resources, and have done so since the inception of this case without
11  any payment or compensation. This is no easy burden for any firm. If, despite these
12  hardships and risks, Plaintiffs' Counsel are paid only basic hourly rates multiplied by the
13  number of hours worked on the case, they would not be fairly compensated for the
14  hardships and serious risks they incurred. More generally, plaintiff's attorneys would not
15  be incentivized to take on similar private attorney general/*qui tam* cases in the future.

16      Fourth, as discussed above, the request for attorneys' fees in the amount of one-
17  third of the common fund falls well within the range accepted by state and federal courts
18  in California in comparable wage and hour actions. The award of a one-third fee
19  recovery under the common fund doctrine was recently approved by the California
20  Supreme Court in *Laffitte*, 1 Cal.5th at 503.

21      For all of these reasons, a common fund fee award in the amount of one-third of
22  the $3.5 million common fund created by Plaintiffs and their attorneys is fair and
23  reasonable.

24      **2.    A Lodestar Cross-Check Confirms the Reasonableness of the**
25          **Fee Award**

26      The trial court may use an abbreviated lodestar "cross-check" for common fund
27  awards if the court considers it useful. *Laffitte*, 1 Cal. 5th at 504-05.  However, under
28  *Laffitte*, this is not meant to displace the percentage analysis, but rather to act as a

1  backstop. Indeed, the Supreme Court expressly instructed that "the lodestar calculation,
2  when used in this manner, does not override the trial court's primary determination of
3  the fee as a percentage of the common fund and thus does not impose an absolute
4  maximum or minimum on the fee award." *Id.* at 505. Critically, the Court in *Laffitte*
5  emphasized that only where the "multiplier calculated by means of a lodestar cross-
6  check is **extraordinarily high or low**" should the court "consider whether the
7  percentage should be adjusted so as to bring the imputed multiplier within a justifiable
8  range." *Id.* (emphasis added). Accordingly, when the cross-check multiplier is within a
9  normal range, the lodestar-cross check does not provide a basis for a court to reduce the
10  fee award. Furthermore, in conducting a lodestar cross-check, the court is not "required
11  to closely scrutinize each claimed attorney-hour." *Id.* at 505. An evaluation may be done
12  by reviewing "counsel declarations summarizing overall time spent." *Id.*

13      In conducting a lodestar cross-check, the Court first determines a lodestar value
14  for the fees by multiplying the time reasonably spent by plaintiffs' counsel on the case
15  by a reasonable hourly rate. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556-
16  57 (2009). To determine whether the requested rate is reasonable, courts look to the
17  prevailing rate for similar work in the pertinent geographic region. *PLCM Group v.*
18  *Drexler*, 22 Cal. 4th 1084, 1096-97 (2000) (using prevailing hourly rate in community
19  for comparable legal services even though party used in-house counsel); *see also* Manual
20  for Complex Litigation, § 14.122, n. 528 (2004) ( "reasonable fees . . . are to be
21  calculated according to the prevailing market rates in the relevant community."). Here,
22  Plaintiffs' Counsel's hourly rates are comparable to, or less than, those charged by other
23  class action plaintiffs' counsel and the firms defending class actions, and have been
24  approved by numerous federal and state courts. Perez Decl. ¶¶ 15-16.

25      Similarly, the total attorney hours expended are reasonable and in line with
26  comparable cases. In determining the reasonableness of the hours expended, "the court
27  should defer to the winning lawyer's professional judgment as to how much time he was
28  required to spend on the case; after all, he won, and might not have, had he been more of

a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Here, Plaintiffs' Counsel billed a combined total of approximately 811 hours to successfully litigate this action. Perez Decl. ¶¶ 13.

These hours were billed toward, *inter alia*: (1) drafting the initial pleadings and engaging in pre-litigation investigation and research; (2) propounding written discovery (including form interrogatories, special interrogatories, requests for admission, and document requests) and reviewing discovery produced by Defendants; (3) defending Plaintiffs' depositions and deposing Defendant's corporate representative; (4) interviewing aggrieved employees about their experiences working for Defendants; (5) conducting multiple on-site inspections of J. C. Penney stores throughout the State of California; (6) drafting the amended pleadings and other miscellaneous filings; (7) preparing for mediation by drafting a detailed memorandum regarding Defendants' maximum potential exposure for PAGA penalties; (8) participating in mediation with Mark Rudy; (9) memorializing the settlement in the long-form PAGA settlement agreement; and (10) drafting the instant Motion and supporting papers. Perez Decl. ¶ 14.

Multiplying the total hours billed by Plaintiffs' Counsel to the aggregate litigation against Defendant by their reasonable hourly rates yields a lodestar of approximately $464,885. Perez Decl. ¶ 13.

Applying a 2.5 multiplier to that lodestar yields the requested fees. A 2.5 multiplier is not "extraordinarily high"—to the contrary, the normal range for a multiplier on a lodestar cross-check "can range from 2 to 4 or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001); *see also See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (multipliers "ranging from one to four are frequently awarded ... when the lodestar method is applied"; affirming fees where the cross-check multiplier is 3.65).

Courts routinely accept multipliers ranging from 2 to 4 on a lodestar cross-check. *See*, *e.g.*, *Laffitte*, 1 Cal. 5th at 487 (California Supreme Court affirmed a 2.13 multiplier on a lodestar cross-check); *Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th

MOTION FOR COURT APPROVAL OF THE PARTIES' PAGA SETTLEMENT

495, 512 (2009) (applying a 2.52 multiplier on a lodestar cross-check); *Chavez.*, 162 Cal. App. 4th at 66 (applying a 2.5 multiplier in a consumer class action); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 810ML02151JVSFMOX, 2013 WL 12327929, at *33 (C.D. Cal. July 24, 2013) (approving 2.87 multiplier on lodestar cross-check); *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015) (approving a 2.10 multiplier on settlement of California Labor Code violations); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (approving attorneys' fees that resulted in lodestar multiplier of 2.83); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) (approving a multiplier of 2.76 in settlement of Labor Code violations).

Indeed, courts following *Laffitte* have reaffirmed that a multiplier between 2 and 4 to be reasonable and not so "extraordinarily high" as to require greater judicial scrutiny. *See Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *13 (S.D. Cal. Sept. 28, 2017) ("one-third fee Class Counsel seeks reflects a multiplier of 2.89 on the lodestar which is reasonable for a complex class action case"); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. Sept. 30, 2016) (finding that a 3.07 multiplier is "well within the range for reasonable multipliers" under *Laffitte*); *Beaver v. Tarsadia Hotels,* No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *13 (S.D. Cal. Sept. 28, 2017) ("The one-third fee Class Counsel seeks reflects a multiplier of 2.89 on the lodestar which is reasonable for a complex class action case."). The lodestar cross-check confirms that Plaintiffs' fee request is fair and reasonable and should be approved.

A cross-check of Plaintiffs' Counsel's aggregate lodestar, which results in the application of a 2.5 multiplier, confirms that a fee award of one third of the $3.5 million settlement amount is a reasonable and fair payment.

### C.   The Requested Recovery In Litigation Expenses Is Reasonable

Plaintiffs' Counsel is also entitled to reimbursement of its discretionary litigation

costs. Cal. Lab. Code §2699(g)(1). Out-of-pocket discretionary expenses are compensable if they would normally be billed to a fee-paying client. *See Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1419 (1991), *overruled in part on other grounds in Olson v. Automobile Club of Southern Calif.*, 42 Cal. 4th 1142 (2008). Such discretionary costs may be claimed as part of an attorneys' fees motion when seeking statutory fees under the Labor Code. *See Amaral*, 163 Cal. App. 4th at 1218 n. 27 (awarding costs that are necessarily incurred). The following chart reflects the costs incurred by Plaintiffs' Counsel:

| Cost & Expense Categories | Amount |
|---|---|
| Copying, Printing & Scanning and Facsimiles | $166.50 |
| Court Fees, Courier Fees, Filings & Service of Process | $3,123.80 |
| Court Reporters, Transcripts & Depositions | $4,724.85 |
| Delivery & Messenger (UPS, FedEx, messenger, etc.) | $203.52 |
| Document Management and Production Services | $18.70 |
| Investigation Services | $7,477.48 |
| Mediation Fees | $7,000.00 |
| Postage & Mailings | $339.25 |
| Research Services (PACER, Westlaw, etc.) | $998.30 |
| Telephone (Long distance, conference calls, etc.) | $6.97 |
| Travel-Related Costs and Expenses | $4,314.39 |
| **Total** | **$28,373.76** |

As indicated above, Plaintiffs' Counsel advanced $28,373.76 in out-of-pocket costs to the State for, among other things, filing fees, postage, photocopying, deposition costs, and mediation fees. Perez Decl. ¶ 17. Because these reasonable costs were necessarily incurred during the case's pendency, they should be reimbursed to Plaintiffs' Counsel.

## IV.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of Plaintiffs' PAGA claims. Having appropriately presented the materials and information necessary for approval, the Parties request that the Court approve the Settlement.

1    Dated: December 28, 2018           Respectfully submitted,

2                                       Capstone Law APC

3

4                           By: _____

5                                       Raul Perez
                                      Robert J. Drexler, Jr.
                                      Molly Ann DeSario
                                      Jonathan Lee

6

7                                       Attorneys for Plaintiffs Stephanie Garrido and Jazmin Solano

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR COURT APPROVAL OF THE PARTIES' PAGA SETTLEMENT